

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

tALD C. MANN
tomey general

April 5, 1939

Hon. Virgil A. Fielden
Chairman, Committee on
Claims and Accounts
House of Representatives
Austin, Texas

Dear Sir:

Opinion No. O-226
Re: Tax claims submitted for
appropriation.

This Department acknowledges receipt of your
letter of February 23rd, addressed to Mr. Lloyd Armstrong,
Assistant Attorney General of Texas, together with files
attached includingsome thirteen separate claims upon
which you desire the opinion of this Department as to
their validity.

In practically all of these claims will be
found a different fact situation, and difficult under
most circumstances to determine. Under such circumstances
where there is likelihood of fraud or imposition or
duress existing in the payment of such taxes such facts,
in our opinion, should be passed upon by the court.

The following claims listed and submitted by
you, all under our opinion No. O-226 assigned, are listed
as follows:

Reliance Life Insurance Company, File No. 53
Lincoln National Life Insurance Company,
File No. 49
American United Life Insurance Company,
File No. 49
Union Central Life Insurance Company, File
No. 9
Ohio National Life Insurance Company, File
No. 8
The Manhattan Life Insurance Company, File
No. 4
The Acacia Mutual Life Insurance Company,
File No. 10
American Credit Indemnity Company, No. 17



Firemen's Insurance Company of Newark,
New Jersey, No. 83
    Charles E. Ricker, NO. 70
    Federal Life and Casualty Company, No. 13
    Joyce Rosborough, No. 5
    Arturo Ortiz, No. 12

Before considering each claim independently and seperately as presented by your honorable committee we think it pertinent to set forth generally such authorities as, in our opinion, govern their disposition.

The legislative authority to enact laws covering appropriations herein requested is limited by the provisions of the Constitution which read:

"Art. 3. Sec. 44. The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, servant, agent or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

The relevant part of Section 44, Article 3, Constitution of Texas, controlling the question of authority of the Legislature to make appropriations covering the refund claims in question is herein set forth:

"The Legislature.....shall not grant.... by appropriation or otherwise, any amount of money out of the treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law;"



The above clause has been interpreted by the Supreme Court in the case of Austin National Bank vs. Sheppard, 71 SW 2nd 243, to mean that the Legislature cannot appropriate State money to any individual unless, at the very time the appropriation is made, there is already in force some valid law constituting the claim the appropriation is made to pay a legal and valid obligation of the State. By legal obligation is declared to be such an obligation as would form the basis of a judgment against the State in a court of competent jurisdiction in the event it should permit itself to be sued. Certain rules of law were reiterated in that case among which was a person who pays an illegal tax under duress has a legal claim for its re-payment and under the facts in that case, Judge Critz writing the opinion for the court, held that such tax or fee was paid under implied duress. It appears that such duress must exist at the time of payment.

Unless the claims fall under the above rule and authority, they are undoubtedly classified as voluntary payment and as stated in the Austin National Bank case, supra, a person who voluntarily pays an illegal tax has no claim for its re-payment. The companion case to the Austin National Bank case, supra, wherein certain tax payments were held voluntarily made was the Corsicana Cotton Mills vs. Sheppard, cited in 71 SW 2nd, 247. The effects of the holding in the above two cases are summarized in the opinion rendered in State vs. Perlstein, 79 SW 2nd 143:

"These cases are conclusive of the questions that although the State receives the benefit of the unauthorized contracts of its officers, or receives unauthorized taxes voluntarily paid into the treasury, the Legislature cannot appropriate money to re-pay such claims because of the constitutional inhibitions aforementioned;...."

These cases, therefore, are further authority for the proposition that a mere moral obligation of the State will not support an appropriation of State money to an individual. State vs. Perlstein, supra.

Of the claims submitted, those to be found in your file No. 53, 49, and 9, arise out of suits brought under the provisions of Article 7055b, commonly known as the "protest statute", enacted by the 43rd Legislature, Acts of 1933, for the purpose of providing an adequate remedy at law to the agrieved taxpayer whereby under its provisions he could enforce liability of the State to pay a certain amount of money on account of the payment of taxes alleged to have been wrongfully exacted by the State from the taxpayer or plaintiff. We deem it necessary to set forth herein, the relevant portion of the named statute:

"Art. 7057b, Sec. 1. Any person, firm or corporation who may be required to pay to the head of any department of the State Government any occupation, gross receipt, franchise, license or other privilege tax or fee, and who believes or contends that the same is unlawful and that such public official is not lawfully entitled to demand or collect the same shall, nevertheless, be required to pay such amount as such public official charged with the collection thereof may deem to be due the State, and shall be entitled to accompany such payment with a written protest, setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized."

Sec. 2. Upon the payment of such taxes or fees, accompanied by such written protest, the taxpayer shall have ninety (90) days from said date within which to file suit for the recovery thereof in any court of competent jurisdiction in Travis County, Texas, and none other. Such suit shall be brought against the public official charged with the duty of collecting such tax or fees, the State Treasurer and the Attorney General. The issues to be determined in such suit shall be only those arising out of the grounds or reasons set

forth in such written protest as originally
filed. The right of appeal shall exist as
in other cases provided by law. Provided, how-
ever, where a class action is brought by any
taxpayer all other taxpayers belonging to the
class and represented in such class action
who have properly protested as herein provided
shall not be required to file separate suits
but shall be entitled to and governed by the
decision rendered in such class action.

"Sec. 3. It shall be the duty of such
public official to transmit daily to the
State Treasurer all money so received, with
a detailed list of all those remitting same,
and he shall inform the State Treasurer in
writing that such money was paid under protest
as hereinabove provided. A deposit receipt
shall be issued by the Comptroller for the
daily total of such remittances from each de-
partment; and the cashier of the Treasury
Department shall keep a cash book to be called
"Suspense Cash Book," in which to enter such
deposit receipts. Upon the receipt of such
money by the State Treasurer it shall be his
duty and he is hereby required to immediately
and forthwith place the same in State de-
positories bearing interest in the same manner
as any other funds of the State required to
be placed in such depositories at interest,
and the State Treasurer shall further be re-
quired to allocate whatever interest is earned
on such funds and to credit the amount thereof
to such suspense account until the statue of
such money is finally determined as herein
provided.

"Sec. 4. If suit is not brought within
the time and within the manner herein provided,
or in the event it finally be determined in
such suit that the sums of money so paid or
any portion thereof, together with the pro rata
interest earned thereon, belong to the State,
then and in that event it shall be the duty of
the State Treasurer to transfer such money from

the suspense account to the proper fund of the State by placing the portion thereof belonging to the State in such fund by the issuance of a deposit warrant. When such deposit warrant or warrants are issued, they shall be entered in the cash book, and the proper fund to which such money is so transferred shall be properly credited therewith. ..."

It will be noted that among the prerequisites to establishing liability on the part of the State for funds claimed, the taxpayer must either bring suit within ninety (90) days from date of protest accompanying payment of the tax or be represented in a class action brought by any taxpayer belonging to the same class through a properly filed protest as provided, and if included in the latter, his suit within the ninety (90) day period is excused. It is further specifically provided that only where the status of the funds are finally determined in such suit, together with the pro-rata interest earned thereon as belonging to the taxpayer, is the State Treasurer required to refund such amount together with pro-rata interest earned.

In prosecuting such claims under the provisions of this statute, it is our view that such taxpayer where he desires to relieve himself of the necessity of filing and prosecuting his own suit in the manner provided, would necessarily have to join or be identified therein by name or reference as a party to the class suit.

"In accordance with the general rule governing voluntary payments, a person who voluntarily pays an illegal tax, even though he pays it under considerable actual pressure, cannot maintain an action to recover it back." 26 R. C. L., para. 411, page 455, and numerous authorities cited thereunder.

"Payment of an illegal tax is not considered to be under duress merely because of a pecuniary penalty imposed upon failure to pay illegal tax within a certain time after it falls due, because the taxpayer could interpose the same defense to an action for the penalty that he could to an action to recover the tax itself." 26 R. C. L. para. 413, page 458; Brunson vs. Crawford County Levy District, 107 Ark. 24, 153 SW 828, Ann. Cas. 1915 A. 493 44 L. R. A. (N. S.) 293 and note.

Practically all of the claims submitted, with exception of those under file No. 70, 13, 5 and 12, involve taxes paid upon the gross premium receipts. Article 4769, Revised Civil Statutes 1925 and as amended. We quote herein the relevant parts of said article which read substantially the same as the original act of 1909:

"Each life insurance company not organized under the laws of this state, transacting business in this state, shall annually, on or before the 1st day of March, make a report to the commissioner, which report shall be sworn to by either the president or vice-president and secretary or treasurer of such company, which shall show the gross amount of premiums collected during the years ending on December 31st, preceding, from citizens of this state upon policies of insurance. Each such company shall pay annually a tax equal to....

"Such taxes shall be for and on account of the business transacted in this State during the calendar year in which such premiums were collected, or for that portion thereof during which the company shall have transacted business in this State. This act shall not in any manner affect the obligation for the payment of any taxes that have accrued and that are now due



or owing, but the obligation as now provided by law for the payment of such taxes shall continue in full force and effect."

Article 4770, Revised Civil Statutes of Texas, reads as follows:

"Upon the receipt of sworn statements showing the gross premium receipts of such company, the Commission of Insurance shall certify to the State Treasurer the amount of taxes due by such com any for the preceding year, which taxes shall be paid to the State Treasurer for the use of the State, by such company. Upon his receipt of such certificate, and the payment of such tax, the Treasurer shall execute a receipt therefor, which receipt shall be evidence of the payment of such taxes. No such life insurance company shall receive a certificate of authority to do business in this State until such taxes are paid. If, upon the examination of any company, or in any other manner, the Commissioner of Insurance shall be informed that the gross premium receipts of any year exceed in amount those shown by the report thereof, theretofore made as above provided, it shall be the duty of such Commissioner to file with the State Treasurer a supplemental certificate showing the additional amount of taxes due by such company, which shall be paid by such company upon notice thereof. The State Treasurer if, within fifteen days after the receipt of him of any certificate or supplemental certificate provided for by this article, the taxes due as shown thereby have not been paid, shall report the facts to the Attorney General, who shall immediately institute suit in the proper court in Travis County to recover such taxes."

Article 4775, pertaining to revoking a certificate of an insurance company, provides that upon failure

or refusal to comply with the provisions or require-
ments of this chapter, the Commissioner upon ascertain-
ing this fact, shall give written notice of his inten-
tion to revoke the company's certificate of authority
to transact business in this State and if provisions
not complied with, at the expiration of thirty days,
it shall be the duty of the Commissioner to revoke the
certificate of authority of such company. It further
provides that in the case of revocation, no certificate
of authority shall issue for one year and until the
company complies with the provisions and requirements.
The company has the right to bring suit to set aside
any such order of revocation.

Article 4776, provides that upon the failure
to make such report or any special report required,
such company shall be subject to a penalty of $25.00
per day for each day in default in addition to revoca-
tion as provided in the preceding article, to be re-
covered in a suit be be brought by the Attorney General.

In the light of the above authorities, we have
considered each claim submitted separately and in connec-
tion therewith, and respectfully render to you our opin-
ion as follows:

File No. 53 - Reliance Life Insurance Company.
This claim is on record in this Department, a suit cover-
ing which having been filed, No. 5087, in the district
Court of Travis County Texas. The file shows that the
suit was dismissed by agreement with and under the former
Attorney General's administration. It is a claim for
refund of 1935 annuity contract considerations, paid
under the above quoted statutes. The claim does not ex-
hibit a copy of the protest. The tax paid on annuity
contract considerations have been held by the court in
the case of Daniel vs. The Life Insurance Company of
Virginia, 102 SW 2nd 256, to be an illegal tax. The
claim does not disclose that the original tax payment
out of which this claim arises was illegally exacted or
paid under duress, expressed or implied. In the absence
of such duress, it is our opinion that the Legislature
is not authorized to make an appropriation to pay the
same. In any doubtful case, however, as to the existence
of such duress, same should be determined by the court.

File No. 49, Hart, Patterson, Hart & Brown, attorneys for-(1) Lincoln National Life Insurance Company, (2) American United Life Insurance Company, successors to American Central Life Insurance Company, These claims, involving the illegal payment of annuity contract considerations, for the year 1933 under the above Article 4769, are still pending in the county court of Travis County, Texas. These suits were filed under the protest statutes and, in our opinion, should be prosecuted to judgment. We will contact this law firm with reference to the disposal of these cases. It is our opinion that the Legislature would not be authorized to make appropriations to pay same while these suits are pending.

File No. 9-Union Central Life Insurance Company. This is also a claim for refund of illegal taxes paid on annuity contract considerations for the years 1933, 1934 and 1937 under the above Article 4769. According to the claim, alleging said taxes to have been paid under protest, we find that no suit was filed within the ninety (90) days under the protest statutes. No suit contesting the rights of the Insurance Commissioner to collect or demand such taxes to be paid upon annuity considerations was brought by the Union Central Life Insurance Company with the ninety (90) day period, nor by any one else in this company's behalf such as to make it a class suit. Both of the claims as presented, totalling Eleven Thousand One Hundred and Thirty and 39/100 ($11,130.39) Dollars, appeared to have been a voluntary payment and as such, in our opinion, an appropriation by the Legislature would be unauthorized.

File No. 8-The Ohio National Life Insurance Company. This claim shows that the payment of taxes under the above article 4769, for the years 1934, 1935, 1936 and 1937 were erroneously overstated by the company in that they failed to take credit for dividends paid. The taxes in question were not paid under protest and, in our opinion, the affidavit does not disclose that any duress, express or implied, existed at the time of payment.

File No. 4-The Manhattan Life Insurance Company. This claim is for a refund of 1937 gross premium taxes paid under Article 4769 on dividends when same were deductable. Said claim does not disclose that it was paid under protest or that any duress existed, express or

implied.

File No. 10-Arcacia Mutual Life Insurance Company. This claim is similar to the above claim in that the company failed to take their legal deduction for dividends in the payment of their taxes, for 1937. The taxes in question were not paid under protest nor does the claim show any duress having existed, express or implied, at the time the taxes were paid.

The above claims, as shown in files Nos. 3, 4 and 10 appear to be voluntary payment of taxes and, in our opinion, an appropriation by the Legislature to pay the same is inhibited by the Constitution of Texas.

File No. 17-American Credit Indemnity Company. This claim presents a mere overpayment of 1936 gross premium taxes paid through error. The taxes were not paid under protest and no duress, express or implied, is disclosed as existing at the time of payment. It is our opinion that same is a voluntary payment and an appropriation by the Legislature would be inhibited by the Constitution of Texas.

File No. 83-Firemen's Insurance Company of Newark, New Jersey. This claim discloses an excess of taxes having been paid for the year 1937 through error by the company and we find no statutory authority for making a refund of same. It is our opinion that this claim was a voluntary payment and an appropriation by the Legislature would be inhibited.

File No. 70-Charles E. Rigger. This file discloses a claim for a refund of $8.00, an illegal license fee, paid under the retaliatory clause of our statutes and the affidavit presents a case of constraint at the time of payment with the license withheld until such illegal amount was paid. The affidavit discloses that the insurance department demanded this tax through mistake. It is our opinion that the claim presents a payment under implied duress and that an appropriation would be authorized.

File No. 18-Federal Life & Casualty Company; File No. 5-Joyce Rosborough; File No. 12-Arturo Ortiz. These claims are for refund of license fees paid by those agents desiring to solicit or write insurance in this State under Article 5068(a), Revised Civil Statutes of Texas, 1925, Section 7. The claim under File No. 18 does not disclose whether or not the Federal Life & Casualty Company paid this fee and that they would be the one entitled to a refund of same, if paid.



Hon. Virgil A. Fielden, April 5, 1939, Page 12

The above three claims appear to be voluntary payment and, in our opinion, an appropriation to refund the payments made would be inhibited by the Constitution.

We have been recently handed a claim of the Export Insurance Company under your File No. 124, which we will consider, rendering our opinion thereon as a supplement to the above assigned Opinion No. O-226.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Wm. J. R. King
Assistant

WmK:AW

APPROVED:

ATTORNEY GENERAL OF TEXAS